IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

NICHOLAS MICHAEL A.,

                    Plaintiff,

          v.                              Civil Action No.
                                          5:18-CV-0916 (DEP)

COMMISSIONER OF SOCIAL,
 SECURITY,

                    Defendant.


_____


APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW OFFICE                   MELISSA A. DeLGUERICO, ESQ.
300 South State Street
Syracuse, NY 13202

FOR DEFENDANT

HON. GRANT C. JAQUITH                KRISTINA D. COHN, ESQ.
United States Attorney               Special Assistant U.S. Attorneys
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

     Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on July 25, 2019, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)	Defendant's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2)     The Commissioner's determination that the plaintiff was not

disabled at the relevant times, and thus is not entitled to benefits under the

Social Security Act, is AFFIRMED.

3)     The clerk is respectfully directed to enter judgment, based

upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____

David E. Peebles
U.S. Magistrate Judge

Dated:     July 30, 2019
           Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
NICHOLAS M. A.,

                        Plaintiff,

vs.                                        5:18-CV-916

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-----------------------------------------------------x

*DECISION* - July 25, 2019

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES

United States Magistrate-Judge, Presiding


<u>APPEARANCES</u> (by telephone)

For Plaintiff:       OLINSKY LAW GROUP
                     Attorneys at Law
                     300 South State Street
                     Syracuse, New York 13202
                       BY:  MELISSA A. DELGUERCIO, ESQ.


For Defendant:       SOCIAL SECURITY ADMINISTRATION
                     Office of Regional General Counsel
                     26 Federal Plaza
                     New York, New York 10278
                       BY:  KRISTINA D. COHN, ESQ.




*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1    THE COURT:  I have before me a challenge to a

2    determination by the Acting Commissioner at the time pursuant

3    to 42, United States Code, Section 405(g) and 1383(c)(3).

4        The background is as follows.  The plaintiff was

5    born in June of 1992; is 27 years of age.  He was 25 years

6    old at the time of the hearing in this matter and at the date

7    of the Supplemental Security Income application.

8        He is married.  He married in 2017.  He lives with

9    his wife and two stepsons who are ten and seven and one of

10   whom is disabled.  There are also a three-year-old and an

11   approximately two-year-old son and daughter.  He lives in

12   Bridgeport in a house.  He stands 6-foot tall and weighs

13   somewhere between 178 and 188 pounds, depending on the record

14   that you review.

15       He has a ninth grade education but has achieved a

16   GED.  While in school he required extra help and

17   accommodation.  He was classified before the CSE at his

18   school as other health impaired.  Plaintiff has a driver's

19   license and drives.

20       Mentally plaintiff has been diagnosed as suffering

21   from several recognized conditions, including ADHD, a

22   generalized anxiety disorder, an adjustment disorder with

23   anxiety, an adjustment disorder with depressed mood, major

24   depressive disorder, opioid use disorder in early remission.

25       The two physicians that have treated the plaintiff

1  longitudinally include Dr. Saundra Barnett-Reyes, a

2  psychiatrist who he has seen since August 2014 and sees

3  approximately one time per month, as well as Dr. Randolph

4  Snow who treated him from June 2016 to April 2017.  He

5  practices with Coppernol Medical and treated plaintiff for

6  heroin and hydrocodone addiction.

7         Medically in terms of prescription drugs plaintiff

8  has been prescribed Suboxone, Doxepin, Wellbutrin,

9  Alprazolam, Carbamazepine and Bupropion.

10         In terms of work, plaintiff stopped work in April

11  of 2012 but really has no significant past relevant work.  He

12  worked briefly in several positions, including as a bus boy,

13  delivery boy, a driveway sealer, and in 2012 he worked for

14  two months in some sort of an inventory position.  That

15  appears at page 189 and 207 of the Administrative Transcript.

16  He also told Dr. Reyes at one point in September of 2014 that

17  he planned to work at the Vernon Downs Casino.  That's at

18  page 310 of the Administrative Transcript.

19         In terms of activities of daily living, the

20  plaintiff cares for the two younger children and indicated at

21  page 321 that he wanted to be a stay-at-home dad.  He can do

22  laundry, he can shop, he can clean, he dresses, he showers,

23  socializes with family and friends, goes to bars, or at least

24  did on his honeymoon, testified that he goes to malls, takes

25  public transportation, watches television, listens to radio,

1  plays video games and goes to the park.  He has testified to

2  going on several trips, including to Myrtle Beach on his

3  honeymoon; to North Carolina, where he apparently flew one

4  way; to Clearwater in 2014, where he had much fun.  That

5  appears at page 40 to 41 of the Administrative Transcript, as

6  well as page 298.

7         In terms of procedural history, the plaintiff

8  applied for Supplemental Security Income benefits, as well as

9  Title II disability insurance benefits, alleging an onset

10  date -- he applied for Title II benefits on August 9, 2015,

11  alleging an onset date of April 22, 2012, and claiming

12  disability based on ADHD, depression, anxiety, panic attacks

13  and social anxiety.  That application was ultimately

14  withdrawn when it was determined that he did not have insured

15  status.  That's at page 19.

16         So he was permitted on October 31, 2015 to file a

17  Title XVI SSI application alleging an amended onset date to

18  August 7, 2014.  The hearing was conducted on November 2,

19  2017 by Administrative Law Judge Yvette N. Diamond on

20  November 29, 2017.  ALJ Diamond issued an unfavorable

21  decision.  That became a final determination of the Agency on

22  May 30, 2018 when the Social Security Administration Appeals

23  Council denied plaintiff's request for review of that

24  determination.

25         In her opinion ALJ Diamond applied the familiar

1    five-step sequential test for determining disability.  She

2    first found that plaintiff had not engaged in substantial

3    gainful activity since October 31, 2017, the date of his

4    application for benefits.

5           At step two she concluded that he suffers from

6    severe impairments imposing more than minimal limitations on

7    his ability to perform work-related functions, including

8    ADHD, major depressive disorder, generalized anxiety

9    disorder, and polysubstance abuse in early remission.

10          ALJ Diamond concluded at step three that

11   plaintiff's conditions did not meet or medically equal any of

12   the listed presumptively disabling conditions set forth in

13   the Commissioner's regulations, and specifically considering

14   listings 12.04, 12.06 and 12.11.

15          After surveying the available evidence, ALJ Diamond

16   concluded the plaintiff retains the residual functional

17   capacity to perform work at all exertional levels with

18   limitations, including limiting plaintiff to simple routine

19   tasks that are not fast paced and do not have strict

20   production demands.  She further indicated that the claimant

21   can have occasional contact with supervisors, co-workers and

22   the public, but cannot perform tasks requiring teamwork.  He

23   is limited to low stress work, defined as occasional

24   decision-making and occasional changes in the work setting.

25   Concluding at step four that plaintiff did not have any past

1    relevant work to consider.

2              And at step five the ALJ concluded, based on the

3    testimony of a vocational expert, that plaintiff is able to

4    perform available work in the national economy, including,

5    for example, as a floor waxer, a cleaner, and an office

6    helper, and, therefore, was not disabled at the relevant

7    times.

8              As you know, my task is limited and the standard of

9    review in this case is extremely deferential.  I must

10   determine whether correct legal principles were applied and

11   whether the determination is supported by substantial

12   evidence, which is defined as the quantity of evidence that a

13   reasonable person would find adequate to support a factual

14   determination.

15             In this case, as a backdrop, I note it is the

16   plaintiff's burden to establish limitations, including

17   through step four of the sequential analysis, and that

18   includes, of course, the RFC step.

19             In terms of treating sources, the argument is made

20   that Dr. Barnett-Reyes' medical source statement, which is

21   Exhibit 8F and was extremely limiting, was improperly

22   discounted.  Unquestionably, the opinion of Dr. Reyes as a

23   treating physician is entitled to considerable deference as

24   far as any statements concerning the nature and severity of

25   plaintiff's impairment, provided that it's supported by

1   medically acceptable clinical and laboratory diagnostic

2   techniques and is not inconsistent with other substantial

3   evidence.  Dr. Reyes' opinion is not controlling, however, if

4   it is contrary to other substantial evidence, including

5   opinions of other medical experts.

6          In this case the Administrative Law Judge did

7   indicate the basis for rejecting Dr. Reyes' opinions.  And

8   that appears at page 78 of the Administrative Transcript.  It

9   is a paragraph in length.  It is somewhat revealing.  It has

10  been noted by the Second Circuit and other courts that the

11  explanation of why a treating source's opinion is discounted

12  is not insufficient merely because it does not slavishly

13  recite all of the factors set forth in the regulations,

14  provided that it is sufficiently outlined to afford for

15  meaningful judicial review.

16         Dr. Reyes' opinions are inconsistent with the

17  opinions of Dr. Brown, a state agency consultant,

18  non-examining, that appeared at 61 to 65; inconsistent with

19  Dr. Noia's consultative exam; inconsistent with Dr. Snow's

20  treatment notes, Dr. Snow having seen the plaintiff, albeit

21  for a slightly different reason, for his addiction over a

22  significant period of time; inconsistent with Dr. Reyes'

23  treatment records; and inconsistent with the activities of

24  daily living.

25         When I look at Dr. Reyes' treatment records

1  February 6, 2015, at page 291, moderate depression, mild

2  anxiety.  When I look at September 29, 2015, that's at 302,

3  mild depression, moderate anxiety.  When I look at May 7,

4  2015, that's at 308, mild depression, mild anxiety.  When I

5  look at December 3, 2015, that's at page 319, mild anxiety.

6  November 3, 2015, at page 321, moderate depression, mild

7  anxiety.  March 1, 2016, at page 325, moderate depression,

8  mild anxiety.  It is in stark contrast to the very limiting

9  nature of the medical source statement from Dr. Reyes.

10          Also look at Dr. Snow who has a longitudinal

11  opportunity to treat the plaintiff.  October 18, 2016, at

12  page 250, plaintiff denied any depression.  February 6, 2016,

13  254, plaintiff denied having any issues.  December 13, 2016,

14  259, plaintiff denied issues.  October 18, 2016, at 266,

15  plaintiff denied being depressed.  April 4, 2017, at 273,

16  plaintiff denied having any issues.  February 7, 2017, at

17  page 279, plaintiff denied having any issues.  January 31,

18  2017, the plaintiff denied issues at page 282.  And I

19  couldn't find it at page 282 but at one point in the notes he

20  stated that he was doing well and feeling like himself.

21          This is not a case like *Camille against Colvin* that

22  was cited by the plaintiff.  This is a case where there were

23  multiple bases for the plaintiff's treating source,

24  Dr. Reyes, to be rejected, the opinions of the treating

25  source to be rejected by the Administrative Law Judge.  I

1  find it was properly explained and so I don't find error in

2  that regard.

3           In terms of failure to complete the record, there

4  is no indication anywhere that there are additional records.

5  Certainly the plaintiff's counsel did not ask that the record

6  be held open or that the Administrative Law Judge assist in

7  obtaining additional records.  There is no mention of a gap

8  in the record by counsel, at page 20 to 21 or page 58.  It is

9  again plaintiff's burden to establish the disability.

10          In terms of whether Dr. Noia's October 23, 2015

11 consultative report is stale, I didn't find anything in the

12 record, and I scoured it, to indicate a worsening of

13 plaintiff's condition over time such that his findings would

14 be stale and contradicted by later opinions.

15          In terms of the residual functional capacity

16 determination, I find that this is supported by substantial

17 evidence, including Dr. Noia, Dr. Snow, the record as a

18 whole, plaintiff's testimony, and his activities of daily

19 living.  The RFC is fairly limiting to simple routine tasks,

20 occasional contact with others, and low stress, and I find

21 that that is supported by substantial evidence.

22          Turning to step five, the determination is

23 supported by the testimony of a vocational expert who was

24 posed a hypothetical that approximates the residual

25 functional capacity finding, and testified that there was

1   work in the national economy that plaintiff is capable of

2   performing notwithstanding his impairments.

3          So, in conclusion, I find that the correct legal

4   principles were applied and substantial evidence supports the

5   determination and, therefore, will grant judgment on the

6   pleadings to the defendant.

7          And let me commend both counsel for very excellent

8   arguments.  You're obviously both very well versed and

9   familiar with the record and the Court appreciates that.  I

10  hope you have a great day and a good summer.

11                  *              *              *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
Realtime Court Reporter, in and for the United States
District Court for the Northern District of New York,
do hereby certify that pursuant to Section 753, Title 28,
United States Code, that the foregoing is a true and correct
transcript of the stenographically reported proceedings held
in the above-entitled matter and that the transcript page
format is in conformance with the regulations of the
Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter